UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
JENNIFER PAX,

              Plaintiff,

**COMPLAINT**

**JURY**
**TRIAL DEMANDED**

-against-

COMMACK UNION FREE SCHOOL DISTRICT,
MICHELLE TANCREDI-ZOTT (Individually),
STEPHANIE IERANO (Individually), MARIE FERRUZZA
(Individually) and MICHELLE DICK (Individually),

              Defendants.

-------------------------------------------------------------------x

Plaintiff, Jennifer Pax (hereinafter "Plaintiff") by her attorneys, SLATER SLATER SCHULMAN LLP hereby submits this Complaint and complains of the Defendants, upon information and belief, as follows:

## **NATURE OF THE CASE**

1. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII") and the New York State Human Rights Law and seeks damages to redress the injuries she suffered because of being exposed to gender discrimination, sexual harassment, retaliation, a hostile work environment, and constructive discharge/wrongful termination.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is proper under 42 U.S.C 42 U.S.C. §2000 e -5(f)(3) and 28 U.S.C. §§ 1331 and 1343.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2), as a substantial part of the actions or omissions giving rise to the claims for relief, occurred within the Eastern District of New York.

## PROCEDURAL PREREQUISITES

4. On or around July 15, 2022, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") against Defendant employer as set forth herein.

5. On or about February 21, 2021, the EEOC mailed a Right to Sue Letter to Plaintiff.

6. Plaintiff satisfied all administrative prerequisites and is filing this case within ninety (90) days of receiving the Right to Sue Letter.

7. Plaintiff served Defendants with a Notice of Claim on July 18, 2022, giving all Defendants notice of the pending federal and state law claims.

## Parties

8. Jennifer Pax is an individual heterosexual female residing in Suffolk County, New York.

9. Defendant Commack Union Free School District (Hereinafter "Defendant" and "Defendants") was and still is a New York State public-school district located in Commack, New York.

10. Defendant Michelle Tancredi-Zott (Hereinafter "Tancredi-Zott") is an individual female.

11. Defendant Tancredi-Zott is/was a Principal within Defendant School District.

12. Upon and information belief Defendant Tancredi-Zott had authority regarding Plaintiff's day to day work experience and could make decisions regarding the terms and conditions of plaintiff's employment.

13. Defendant Stephanie Ierano (Hereinafter "Ierano") is an individual female.

14. Defendant Ierano is/was the lead teacher on Special assignment at Sawmill and her duties were those of an administrator.

15. Upon information and belief Defendant Ierano's employment duties included the receipt of any and all complaints by employees at Sawmill including complaints of discrimination during the relevant time period.

16. Defendant Michelle Dick (Hereinafter "Dick") is an individual female.

17. Defendant Dick is/was a teacher at Sawmill.

18. Defendant Marie Ferruzza (Hereinafter "Ferruzza") is an individual female.

19. Defendant Ferruzza is/was a special needs teacher at Sawmill.

20. Defendants are covered employers or individuals within the meaning of Title VII, 42 U.S.C. § 2000e et seq., and the New York State Human Rights Law and at all relevant times employed Plaintiff.

21. Plaintiff is a covered employee within the meaning of the Title VII, 42 U.S.C. § 2000e et seq., and the New York State Human Rights Law at the time of her employment.

## Facts

22. Defendants hired Plaintiff in or about September 2021.

23. Defendants hired Plaintiff as Librarian at Mandracchia-Sawmill Intermediate School (Sawmill).

24. At all relevant times, Michelle Tancredi-Zott ("Tancredi-Zott" "Defendant" "Defendants") was the Principal at Sawmill.

25. At all relevant times, Stephanie Ierano ("Ierano" "Defendant" "Defendants") was the Lead Teacher on Special Assignment at Sawmill, and her duties were those of an administrator.

26. Both Defendant Tancredi-Zott and Defendant Ierano communicated to the Sawmill faculty that any health and safety concerns were to be reported to Defendant Ierano, who acted as a liaison between teachers and Defendant Tancredi-Zott.

27. As a result of this instruction, Plaintiff reported her harassment complaints to Defendant Ierano who received them without objection.

28. Defendants' teachers began to sexually harass Plaintiff almost immediately upon being hired.

29. In or about late August 2021, Defendant Dick approached Plaintiff in the library office while she was preparing for the upcoming school year.

30. Defendant Dick noticed that Plaintiff had tattoos and commented she had tattoos as well.

31. Defendant Dick attempted to display her own tattoos on her upper left thigh by pulling down her pants to her knees, revealing her genitals and buttocks, and stated, "**I hope you don't ha, ha mind I don't wear underwear.**"

32. Plaintiff complained to Defendant Ierano about the harassment that occurred in or about September 2021.

33. Defendant Ierano responded by laughing and stating, "That's just how Dick is."

34. Defendant Ierano's comment left Plaintiff confused as to why Defendants' staff was okay with Defendant Dick's behavior.

35. As such, Defendants had notice regarding the sexual harassment Plaintiff experienced.

36. In or about November 2021, Defendant Dick harassed Plaintiff for the second time.

37. Defendant Dick had recently undergone a surgical procedure on her breast which resulted in the loss of her nipple and chose to have images of nipple tattooed in their place.

38. Plaintiff Dick approached Plaintiff in the presence of Defendant Dick's third grade students and asked, "**Do you want to see my nipple tattoos?**"

39. Plaintiff was in disbelief that Defendant Dick would again attempt to expose intimate parts of her body to her.

40. Plaintiff immediately made a complaint with Defendant Ierano following this second incident.

41. Defendant Ierano's response was, "Yeah, she's been going around trying to show everyone."

42. As such Defendants had notice of the sexual harassment Plaintiff was experiencing.

43. In or about November or December 2021, Defendant Ferruzza harassed Plaintiff.

44. Plaintiff was sitting in the library on a Zoom call with a fourth-grade class when Ferruzza walked outside the library window and fondled her breast while sticking her tongue out in an explicit manner at Plaintiff.

45. Plaintiff complained to Defendant Ierano about the incident.

46. In response Defendant Ierano stated, "(Ferruzza) is just vey sexual."

47. In or about December 2021, Defendant Ferruzza began a rumor among Sawmill faculty members that Plaintiff was a lesbian.

48. Plaintiff is not a lesbian.

49. Plaintiff complained to Defendant Ierano that Defendant Ferruzza was spreading rumors about her, but no steps were taken to alleviate the harassment.

50. As such, Defendants were aware of the sexual harassment Plaintiff was experiencing.

51. In or about January 2022, Plaintiff was again harassed by Defendant Dick.

52. Plaintiff had recently undergone a lumpectomy and was required to wear a sling around her chest.

53. Plaintiff entered the bathroom at Sawmill, Defendant Dick approached Plaintiff and said, "**What, did you have your tits done?**"

54. The following day, Defendant Dick approached Plaintiff in the hallway and said, "**Are you ever going to fucking tell me what you got done?**"

55. Defendant Dick approached Plaintiff yet again later that day in Plaintiffs' office and continued to question Plaintiff as to the procedure she had undergone.

56. Immediately after these incidents, Plaintiff complained to Defendant Ierano about the continued harassment.

57. Plaintiff additionally complained that in or about September 2021 to January 2022, Defendant Dick would regularly approach Plaintiff in school and state, "**Why don't you suck my dick?**"

58. Defendant Dick approached Plaintiff on multiple occasions in front of others telling Plaintiff to "**Suck my dick**."

59. Plaintiff complained to Defendant Ierano about the incident, in response Defendant Ierano laughed.

60. As such, Defendants had notice of the continuing sexual harassment Plaintiff was experiencing.

61. In or about February 2022, Plaintiff discussed the sexual harassment to a co-worker.

62. The co-worker suggested that Plaintiff once again make a complaint with Defendant Ierano.

63. As Plaintiff was discouraged by the lack of help and support offered by Defendant Ierano, Plaintiff filed two sexual harassment claims with Defendant Tancredi-Zott.

64. One week after the complaint, an independent investigator was assigned to assess the validity of the Plaintiff s' complaints.

65. Plaintiff was interviewed by John Coverdale on February 9th and February 11th of 2021.

66. During the investigation, the investigator, John Coverdale ("Coverdale"), interviewed Plaintiff in the presence of Tracy Goldman (Goldman).

67. As Plaintiff discussed the various instances of sexual harassment that she was a victim to, Coverdale demanded Plaintiff demonstrate the behaviors of her harassers.

68. When Plaintiff explained that Defendant Dick exposed herself in the library office, Coverdale said, "**Stand up and pull down your pants the way [Dick] did**."

69. As Plaintiff explained that Defendant Ferruzza grabbed her breasts, Coverdale asked, "**Can you standup and demonstrate how she fondled her breasts?**"

70. Coverdale sexually harassed plaintiff, as the demonstrations were unnecessary and inappropriate.

71. Plaintiff than stepped into Goldman's office and stated she has now been sexually harassed for the third time by a different person.

72. Goldman's responded by saying, "I can't believe that just happened."

73. As a result, Plaintiff was embarrassed and humiliated by Coverdale's unreasonable demands.

74. In or about late February 2022, the independent investigation concluded, and it was determined that plaintiff s' claims against both Dick and Ferruzza were substantiated.

75. On or about March 10, 2022, Plaintiff received a letter from Defendant District confirming the conclusion of the investigation and that her complaints of sexual harassment were substantiated. The letter stated the following:

> **"As you know, you were interviewed by Dr. John Coverdale, from The Center for Workplace Solutions, on February 9, and again February 11, 2022, as part of an investigation with regard to a complaint against another District employee. I am writing to inform you that the investigation has concluded. It has been determined that your complaint that the employee violated the Sexual Harassment in the Workplace policy was substantiated."**

76. The letter further confirmed that retaliation for reporting sexual harassment would not be tolerated by Defendants.

77. Shortly after Defendant Dick was administratively reassigned to Defendant's administrative building, Cedar Road and Defendant Ferruza was reassigned to work at a different elementary school within the Defendants' school district.

78. Shortly after the investigation, Defendants retaliated against Plaintiff several times by filing a series of complaints against her.

79. Prior to the complaints and investigation, Plaintiff had no complaints or disciplinary actions against her.

80. In the week following the investigation into the sexual harassment, Defendant Tancredi-Zott wrote up Plaintiff for allegedly yelling at a student.

81. As a result, Plaintiff had a telephone call with the students' father in the presence of Defendants.

82. The student that made the claim was a member of Defendant Dick's class prior to her administrative reassignment.

83. During the telephone call with the student's father, the father admitted that it was in fact Defendant Dick who yelled at the student.

84. Defendants still disciplined Plaintiff for this conduct despite evidence to the contrary.

85. This was clearly retaliation and Plaintiff was still a probationary employee of the Defendants at the time.

86. In or about March 2022, Defendants wrote up Plaintiff for a second time for closing the library instructional area, Tancredi-Zott stated that it "did not create a welcoming environment for teachers."

87. Shortly after, Defendants wrote up Plaintiff for a third time for allegedly placing a sign on the library office door stating that only the librarian was allowed to enter the office.

88. The sign was already in place prior to Plaintiff's employment with Defendants.

89. Upon information and belief no prior librarian was written up for the sign.

90. In or about March 2022, Plaintiff was again written up because students stated they were not sure which version of Plaintiff they were going to get for the day, "the fun version or the mean version."

91. On or about June 10, 2022, Plaintiff was called to a meeting with her union representative, Tracy Goldman and Michael Inforna, an employee of Defendants' Human Resources department.

92. Goldman stated, "I can't believe they are putting you with Michelle Dick."

93. During the meeting, Plaintiff was handed a piece of paper by Inforna stating that she was being investigated, but the paper did not state what the investigation was about.

94. It additionally stated that Plaintiff was to be administratively reassigned to Cedar Road, which was the same location where Defendant Dick, one of her harassers, had just been reassigned.

95. Inforna then told Plaintiff to gather her belongings and directed security to escort her out of the school.

96. Feeling backed into a corner and forced out of her position, Plaintiff resigned on or about June 12, 2022.

97. The letter from Plaintiff to Defendants stated the following:

**"Throughout the 2021-2022 school year, I have been subjected to sexual harassment that was founded against two colleagues. Immediately following the allegations and findings, I have been retaliated against by Principal Michelle Tancredi-Zott who continued to formulate false allegations against me personally and as a professional. To coincide with the sexual harassment, I was also accused of being a lesbian and the staff went around spreading these rumors about me.**

**I was further victimized when the Commack School District hired an independent investigator, Dr. John Coverdale, to investigate my report of sexual harassment by two staff members. On February 12th, during the course of Dr. Coverdale's questions, I explained to him that staff member Michelle Dick pulled her pants down to me a tattoo and stated that she hoped I didn't mind but that she doesn't wear underwear at which point I quickly turned my head. Dr. Coverdale was questioning me about the details of how she pulled down her pants down and asked me to demonstrate how she did it. I was shocked by his request and just sat there in disbelief. My union representative, Tracy Goldman, told him that I was not going to demonstrate.**

**Dr. Coverdale also questioned me about the second allegation I reported that while sitting at my desk teaching a class over zoom on my laptop, Marie Ferruzza pushed her breasts up against the window directly in front of me and then touched her breasts. Dr. Coverdale then instructed me to demonstrate how Ms. Ferruzza fondled her breasts. I once again refused to respond in any matter. My union representative, Tracy Goldman, spoke up and told him that I was not going to demonstrate. These inappropriate requests by the district selected investigator caused me to re-experience the traumatizing events causing extreme stress and anxiety. I was the victim in these situations and was then subjected to relive the experience and asked to act it out. Dr. Coverdale's actions were abusive in and of themselves."**

98. After making several complaints of harassment and discrimination, Plaintiff was then accused of sexual harassment as a means of forcing her from her employment.

99. Defendants created a working environment where sexual harassment was highly prevalent and, in the end, accused Plaintiff of the very behavior and conduct they would not stop.

100. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

101. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income the loss of salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

102. Plaintiff has further experienced severe emotional and physical distress.

103. Upon information and belief, the discrimination will continue after the date of this complaint and Plaintiff hereby makes a claim for all continuing future harassment.

104. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages against the Defendants.

105. Plaintiff claims a continuous practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

106. The above are just some examples, of some of the discrimination to which Defendants subjected Plaintiff.

107. Defendants exhibited a pattern and practice of discrimination and retaliation.

## AS A FIRST CAUSE OF ACTION

*(Title VII Hostile Work Environment, Gender and Sexual Discrimination Not Against Any Individual Defendant)*

108. Plaintiff repeats and realleges each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

109. Plaintiff was an employee within the meaning of Title VII of the Civil Rights Act, 42.U.S.C. § 2000e(f).

110. At all relevant times, Defendant employed in excess of fifteen (15) employees and was an employer within the meaning of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e(b).

111. Pursuant to Title VII, 42 U.S.C. § 2000e-2(a) it is unlawful for an employer to discriminate against an employee because of such employee's "sex/gender".

112. Defendant violated Plaintiff's rights under Title VII when Defendant created and maintained a hostile work environment based on sex and sexual harassment.

113. Defendant's unlawful acts were intentional, willful, malicious and in reckless disregard of Plaintiff's rights.

114. As a result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer damages, in form including, but not limited to, lost income, bonuses, lost future earnings and also suffered future pecuniary losses, severe emotional distress, mental anguish, humiliation, loss of enjoyment of life, pain and suffering, and other non-pecuniary losses.

## AS A SECOND CAUSE OF ACTION

*(Title VII Retaliation Discrimination Not Against Any Individual Defendant)*

115. Plaintiff repeats and realleges each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

116. Plaintiff was an employee within the meaning of Title VII of the Civil Rights Act, 42.U.S.C. § 2000e(f).

117. At all relevant times, Defendant employed in excess of fifteen (15) employees and was an employer within the meaning of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e(b).

118. Pursuant to Title VII, 42 U.S.C. § 2000e-3(a)an employer may not discriminate against any of its employees because the employee has opposed any practice made unlawful by Title VII.

119. Defendant violated Plaintiff's rights under Title VII when Defendant retaliated against Plaintiff after she complained of sexual harassment, discrimination, and retaliation.

120. Defendant's unlawful acts were intentional, willful, malicious and in reckless disregard of Plaintiff's rights.

121. As a result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer damages, in form including, but not limited to, lost income, bonuses, lost future earnings and also suffered future pecuniary losses, severe emotional distress, mental anguish, humiliation, loss of enjoyment of life, pain and suffering, and other non-pecuniary losses.

## **AS A THIRD CAUSE OF ACTION**
(Aiding and Abetting under New York State Law)

122. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

123. New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice: "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

124. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

125. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff through gender/sex discrimination, hostile work environment based on sex, sexual harassment, hostile work environment, and constructive discharge/wrongful discharge.

## AS A FOURTH CAUSE OF ACTION
(Retaliation under New York State Law)

126. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

127. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

128. Defendant School District and Defendant Tancredi-Zott engaged in an unlawful discriminatory practice by wrongfully retaliating against Plaintiff.

129. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

## AS A FIFTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER NEW YORK STATE LAW
(Discrimination under New York State Law)

130. Plaintiff repeats and reallege each and every allegation made in the above paragraphs of this complaint.

131. Executive Law § 296 provides that "It shall be an unlawful discriminatory practice:

"(a) For an employer or licensing agency, because of the age, race, creed, color, national origin, sex, or disability, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

132. Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiffs through gender/sex/sexual discrimination, hostile work environment based on sex, sexual harassment, and constructive discharge.

133. Plaintiffs hereby make a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

## JURY DEMAND

Plaintiff demands that the foregoing causes of action be tried before a jury.

**WHEREFORE**, Plaintiff demands judgment against Defendants, in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: Melville, New York
July 24, 2023

    Respectfully submitted,

    SLATER SLATER SCHULMAN LLP

    *John C. Luke, Jr.*
    John C. Luke, Jr.
    445 Broad Hollow Road, #419
    Melville, New York 11747
    631-420-9300
    *Attorneys for Plaintiff*

**DEMAND TO PRESERVE EVIDENCE**

Defendants are hereby directed to preserve all physical and electronic information pertaining in any way to Plaintiffs' employment, cause of action and/or prayers for relief, and to any defenses to same, including, but not limited to, electronic data storage, closed circuit TV footage, digital images, computer images, cache memory, searchable data, computer databases, emails, spread sheets, employment files, memos, text messages, any and all online social or work related websites, entries on social networking sites (including, but not limited to, Facebook, Twitter, MySpace, etc.), and any other information and/or data and/or things and/or documents which may be relevant to any claim or defense in this litigation.